FILED
**United States Court of Appeals**
**Tenth Circuit**

**February 5, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT
_____

DONALD RAY LOGSDON, JR.,

    Plaintiff - Appellant,

v.

UNITED STATES MARSHAL SERVICE;
PHILIP BRIAN GILLIAM, Deputy,
United States Marshal; JERE SMITH,
United States Marshal; CODY VAUGHN,
Task Force Officer, United States Marshal
Service,

    Defendants - Appellees.

----------------------------

ACLU, ACLU OF OKLAHOMA, ACLU
OF COLORADO, ACLU OF KANSAS,
ACLU OF NEW MEXICO, ACLU OF
UTAH & ACLU OF WYOMING;
INSTITUTE FOR JUSTICE,

    Amici Curiae.

No. 23-7008

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:21-CV-00253-KHV-TJJ)**
_____

Kevin E. Jason, NAACP Legal Defense & Educational Fund, Inc., New York, New York
(Janai S. Nelson, Samuel Spital, and Ashok Chandran, NAACP Legal Defense &
Educational Fund, Inc., New York, New York; Christopher Kemmitt, NAACP Legal
Defense & Educational Fund, Inc., Washington, D.C, and Wil M. Crawford, Indian &

Environmental Law Group, PLLC, Ada, Oklahoma, with him on the briefs) for Plaintiff - Appellant.

Dana L. Kaersvang, United States Department of Justice, Washington, D.C. (Brian M. Boynton, Principal Deputy Assistant Attorney General, Christopher J. Wilson, United States Attorney, Barbara L. Herwig, and Edward Himmelfarb, Attorneys, Appellate Staff, Mary H. Mason, and Evelyn S. Yarborough, Attorneys, Torts Branch, Washington, D.C., with her on the briefs) for Defendants - Appellees.

Brett M. Kaufman, Elizabeth Gyori, ACLU Foundation, New York, New York (joined by Megan Lambert, ACLU of Oklahoma, Oklahoma City, Oklahoma, Tim Macdonald, ACLU of Colorado, Denver, Colorado, Cecillia D. Wang, ACLU Foundation, San Francisco, California, Sharon Brett, ACLU of Kansas, Overland Park, Kansas, María Mártinez Sánchez, ACLU of New Mexico, Albuquerque, New Mexico, Stephanie Amiotte, ACLU of Wyoming, Jackson, Wyoming, John Mejia, ACLU of Utah Foundation, Salt Lake City, Utah); filed a brief on behalf of Appellant, for Amici Curiae ACLU, ACLU of Oklahoma, ACLU of Colorado, ACLU of Kansas, ACLU of New Mexico, ACLU of Utah, and ACLU of Wyoming.

Trace Mitchell, Anya Bidwell, Patrick Jaicomo, Institute for Justice, Arlington, Virginia; filed a brief on behalf of Appellant, for Amicus Curiae Institute for Justice.

_____

Before **HARTZ**, **MORITZ**, and **ROSSMAN**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

In *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), the Supreme Court first created a cause of action against federal agents for a violation of the Bill of Rights. The opinion held that agents of the Federal Bureau of Narcotics could be liable for damages for an unlawful warrantless arrest and search and for employing unreasonable force in making the arrest. *See id.* at 389–90.

But, at least in the view of the Supreme Court in recent decades, that opinion has not worn well. Although the Court recognized causes of action under *Bivens* in

two subsequent cases—a congressional staffer's Fifth Amendment Due Process sex-discrimination claim against a Member of Congress, *see Davis v. Passman*, 442 U.S. 228 (1979), and a claim against federal prison officials under the Eighth Amendment for inadequate care of an inmate, *see Carlson v. Green*, 446 U.S. 14 (1980)—it is on course to treating *Bivens* as a relic of the 20th century. This development has been gradual, but relentless. Without explicitly overruling its three acknowledged precedents, the Court has shown an increasing willingness to distinguish them, now stating that the ultimate question to ask when determining whether the courts should recognize a *Bivens* cause of action not created by Congress is ordinarily only "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492 (2022). And the circumstances in which the answer to the question is "no" appears to comprise a null set. *See id.* at 503. (Gorsuch, J., concurring) ("When might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action? It seems to me that to ask the question is to answer it. To create a new cause of action is to assign new private rights and liabilities—a power that is in every meaningful sense an act of legislation."); *see also Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("[W]e are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (quoting *Egbert*, 596 U.S. at 491) (citation omitted)). The Court has said in effect that almost any difference between the case at hand and the three Court precedents can justify rejecting a cause of action.

Page **3**

*See Egbert,* 596 U.S. at 503 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").

And, perhaps even more striking, the Court has justified a departure from those precedents even when the facts are virtually the same if the government can provide a reason for not recognizing a cause of action that was not considered in the applicable precedent. Thus, in *Egbert* itself the Court considered an excessive-force claim, similar to the one in *Bivens*, against a federal officer. *See Egbert*, 596 U.S. at 495 ("*Bivens* and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury." (internal quotation marks omitted)). But it held that the court of appeals erred by recognizing a cause of action under *Bivens*, distinguishing *Bivens* based on facts that have no bearing on the elements of an excessive-force claim: the incident arose in the "border-security context," and Congress had created remedies for misconduct by government agents. *See id.* at 494. Given such hurdles placed in the way of a *Bivens* cause of action, Mr. Logsdon has no claim.

## I.     BACKGROUND

### A.     Factual Background

Supplementing the allegations of the complaint (which we take as true) with undisputed facts, we briefly summarize the relevant facts. On March 5, 2020, Deputy United States Marshal Phillip Gilliam and Special Deputy United States Marshals (Task Force Officers) Jere Smith and Cody Vaughn (Defendants) were executing a state-court warrant for the arrest of Mr. Logsdon on a charge of assault with a

dangerous weapon. They secretly approached him after dark while he was working on a generator outside a friend's house. Deputy Gilliam ran up behind him and kicked him in the face, rendering him unconscious. The three officers then stomped on him for two minutes.

### B.     Procedural History

Mr. Logsdon filed a pro se lawsuit in the United States District Court for the Eastern District of Oklahoma against the United States Marshal Service (USMS) and the three deputies, asserting a claim under *Bivens* based on the alleged excessive use of force. After the district court dismissed USMS as an improper party for a *Bivens* claim, Defendants moved to dismiss on the ground that *Bivens* does not provide a remedy for Mr. Logsdon's allegations against them, or, alternatively, on the ground that they are entitled to qualified immunity. The district court overruled the motion on both grounds.

Defendants then filed a motion to reconsider that ruling as to their *Bivens* argument. The district court sustained the motion to reconsider and dismissed the case. Mr. Logsdon now appeals that order, arguing that the district court erred on the merits and abused its discretion by considering the motion to reconsider.

## II.     DISCUSSION

### A.     The *Bivens* Claim

In *Egbert* the Supreme Court recognized that it had previously analyzed whether to recognize a proposed *Bivens* claim by conducting a two-step analysis. *See* 596 U.S. at 492. "First," it said, "we ask whether the case presents a new *Bivens*

Page **5**

context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action." *Id.* (brackets and internal quotation marks omitted). Then, if it is a new context, "a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* (internal quotation marks omitted). But it is hard to see the difference between the analyses conducted in the two steps. Regarding the first step, the Court has said:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or *the presence of potential special factors that previous* Bivens *cases did not consider*.

*Ziglar v. Abbasi*, 582 U.S. 120, 139–40 (2017) (emphasis added). If there was any doubt concerning whether the "special factors" in the final catchall clause describing the first step of the analysis were somehow different from the "special factors" to be considered in the second step, that doubt was dissipated when *Egbert* said: "While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492.

In this case we conclude our analysis should focus on that single question. We address three features of this case not considered by the Supreme Court in *Bivens*:

(1) the nature of the law-enforcement conduct, (2) the category of defendant, and (3) the existence of other remedies for misconduct.

The law-enforcement conduct at issue in *Bivens* involved the warrantless entry into a home. *See Bivens*, 403 U.S. at 388. Here, the deputy marshals executed an arrest warrant outside the house of Mr. Logsdon's friend. Mr. Logsdon contends that the warrant and location of the arrest have no legal significance in an excessive-force case. We agree, and we give little weight to this distinction. *See Snowden v. Henning*, 72 F.4th 237, 247 (7th Cir. 2023) ("Hotel or home, warrant or no warrant—the claims here and in *Bivens* stem from run-of-the-mill allegations of excessive force during an arrest.").[1] To be sure, there is substantial authority to the contrary. Several other circuits have said that a new *Bivens* context exists when federal officials execute a valid warrant. *See Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (Fourth Amendment claims asserting that investigators falsified evidence and affidavits to obtain search and arrest warrants created a new *Bivens* context because *Bivens* involved "the Fourth Amendment right to be free of unreasonable *warrantless*

---

[1] In addition to *Snowden*, Mr. Logsdon cites other cases in which *Bivens* claims were examined on their merits even though officers had a warrant or acted in a place where the plaintiff lacked a reasonable expectation of privacy. But those cases are irrelevant because they each considered only whether a *Bivens* claim was defeated by qualified immunity without considering whether *Bivens* should apply under the circumstances. *See Wilson v. Layne*, 526 U.S. 603, 605–06 (1999); *Thomas v. Durastani*, 607 F.3d 655, 659 (10th Cir. 2010); *Salmon v. Schwarz*, 948 F.2d 1131, 1135 (10th Cir. 1991); *Mick v. Brewer*, 76 F.3d 1127, 1129 (10th Cir. 1996); *Wellington v. Daza*, No. 21-2052, 2022 WL 3041100, at *1 & n.1 (10th Cir. Aug. 2, 2022) (unpublished); *Alvarado-Escobedo v. United States*, 817 Fed. App'x. 536, 539–40 (10th Cir. 2020); *Serrano v. United States*, 766 Fed. App'x 561, 564 (10th Cir. 2019).

searches and seizures; this case, by contrast, involves searches and a seizure conducted *with* a warrant."); *Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (Fourth Amendment claim alleging officers fabricated evidence was "meaningfully different from the Fourth Amendment claim at issue in *Bivens*" in part because the plaintiff did not allege that officers entered his home without a warrant); *Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *3 (6th Cir. July 25, 2023) (unpublished) (unlawful entry into a residence to execute an arrest warrant of a third-party who officers believed resided there was a new *Bivens* context). And some circuits have said that a new context arises when the violation does not occur in the plaintiff's home. *See Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2023) (Fourth Amendment claim based on excessive force created a new *Bivens* context because "unlike *Bivens*, none of the events in question occurred in or near [the plaintiff]'s home. The entire incident occurred on public lands managed by [the Bureau of Land Management] and the National Park Service, a place where [the plaintiff] had no expectation of privacy."); *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) ("Byrd's lawsuit differs from *Bivens* in several meaningful ways [, including that the] case arose in a parking lot, not a private home as was the case in *Bivens*."). We need not, however, dwell on our differences with other circuits on these points, because there are other sufficient grounds for holding that Mr. Logsdon has no claim under *Bivens* in this case.

More compelling as a special factor is that agents of the USMS are a new category of defendant. *See Egbert*, 596 U.S. at 492 (involvement of a "new category

of defendants" is a new context that presents "potential special factors that previous *Bivens* cases did not consider" (internal quotation marks omitted)). Mr. Logsdon argues that a new agency does not create a new *Bivens* context when the defendants are "rank-and-file federal officers." Aplt. Br. at 28, 32. We disagree.

After all, the defendant in *Egbert* was a rank-and-file Border Patrol agent. *See Egbert,* 596 U.S. at 486. And since that decision two other circuits have held that there was a new context when confronting lower-level officers from a different agency. *See Mejia*, 61 F.4th at 668 (in rejecting *Bivens* claim against Bureau of Land Management [BLM] officers, court notes that *Egbert* "identifie[d] the legal mandate under which the officer was operating as an example of a new context" and that plaintiff did "not point to any reason to believe . . . that BLM has the same mandate as agencies enforcing federal anti-narcotics law [as in *Bivens*]" (internal quotation marks omitted); *Cain*, 2023 WL 6439438, at *4 (unpublished) ("Another meaningful distinction between this case and *Bivens* is the federal agency involved. This case involved the U.S. Marshals Service, while *Bivens* concerned the actions of agents of the Federal Bureau of Narcotics. Thus, allowing [the plaintiff]'s claim would extend *Bivens* to 'a new category of defendants,' which *Egbert* identified as a new context." (quoting *Egbert*, 596 U.S. at 492)).[2]

---

[2] Mr. Logsdon argues that the Supreme Court and this court have already recognized *Bivens* claims against USMS officers. But none of the cited cases is relevant because none considered whether there was a new *Bivens* context. Instead, they considered whether Deputy U.S. Marshals were entitled to qualified immunity in a *Bivens* action, *see Wilson*, 526 U.S. at 605–06; *Alvarado-Escobedo*, 817 Fed. App'x at 539–40; *Serrano*, 766 F. App'x at 564, whether the plaintiff adequately alleged a

Of particular relevance here is a duty of the USMS that was not a factor considered in *Bivens*. The USMS is statutorily required to partner with state and local law-enforcement authorities to create Fugitive Apprehension Task Forces, which are directed and coordinated by the USMS. *See* 34 U.S.C. § 41503(a). And it has the authority (which was exercised in this case) to federally deputize officers from other jurisdictions to perform the functions of a Deputy U.S. Marshal. *See* 28 C.F.R. § 0.112(b). These officers act under color of federal law when acting in that capacity. *See Yassin v. Weyker*, 39 F.4th 1086, 1090–91 (8th Cir. 2022). Chilling participation in joint task forces is therefore a potential cost of expanding *Bivens* to Deputy U.S. Marshals. *See Cain*, 2023 WL 6439438, at *4 ("[A]llowing claims for damages against members of federal fugitive-apprehension task forces could impair the government's recruitment of officers to participate in those task forces and could negatively affect task members' performance of their duties."); *see also Egbert*, 596 U.S. at 499 ("Recognizing any new *Bivens* action entails substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." (brackets and internal quotation marks omitted)).[3] We are confident that the Supreme Court would hold

constitutional violation, *Smith v. Arguello*, 415 F. App'x 57, 60–61 (10th Cir. 2011), or whether the plaintiff sued the defendants in their individual capacities, *Trapp v. U.S. Marshals Serv.*, 139 F. App'x 12, 14–15 (10th Cir. 2005).

[3] Mr. Logsdon argues that Defendants forfeited this argument by failing to raise it before the district court. But the Supreme Court, even when reversing the lower court, considered and rejected a similar forfeiture argument in *Egbert*, and we do the same here. *See Egbert*, 596 U.S. at 497 n.3 ("Because recognizing a *Bivens*

"that the Judiciary is not undoubtedly better positioned than Congress to authorize a damages action in [this] context," *Egbert*, 596 U.S. at 495, where the impact of potential liability on cooperation among law-enforcement agencies needs to be assessed.

A second independent ground for not recognizing a *Bivens* action in this case is that the availability of alternative remedies for misconduct by Deputy U.S. Marshals suggests that this court should not be the institution to create a remedy. "If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 493 (internal quotation marks omitted). "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." *Id.* at 498 (internal quotation marks omitted). In *Egbert* the Court said that an administrative grievance procedure was a sufficient alternative remedy without describing how the procedure operated or stating what type of penalty was available.

---

cause of action is an extraordinary act that places great stress on the separation of powers, we have a concomitant responsibility to evaluate any grounds that counsel against *Bivens* relief." (citations and internal quotation marks omitted)). Moreover, this court has repeatedly stated that we can *affirm* the judgment below on any ground supported by the record, so long as addressing the ground is fair to the opposing party. *See, e.g., Champagne Metals v. Ken-Mac Metals, Inc.,* 458 F.3d 1073, 1088 (10th Cir. 2006).

All it said about the remedy was: "The U.S. Border Patrol is statutorily obligated to control, direct, and supervise all employees. And, by regulation, Border Patrol must investigate alleged violations of the standards for enforcement activities and accept grievances from any persons wishing to lodge a complaint." *Id.* at 497 (cleaned up); *cf. Silva*, 45 F.4th at 1141 (10th Cir. 2022) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001), in holding that the Bureau of Prisons' Administrative Remedy Program was adequate). The Court rejected the plaintiff's argument that the process was inadequate because he had no right to participate in it or seek judicial review of an adverse determination, explaining that "*Bivens* is concerned solely with deterring the unconstitutional acts of individual officers—i.e., the focus is whether the Government has put in place safeguards to prevent constitutional violations from recurring." *Egbert*, 596 U.S. at 498 (brackets and internal quotation marks omitted).

Here, as several other courts have already held since *Egbert*, the internal USMS grievance procedure and the Department of Justice's Office of the Inspector General (OIG) investigation procedure are adequate alternative remedies. *See Cain*, 2023 WL 6439438 at *4; *Robinson v. Heinze*, 655 F. Supp. 3d 1276, 1284 (N.D. Ga. 2023); *Lewis v. Westfield*, 640 F. Supp. 3d 249, 254–55 (E.D.N.Y. 2022); *McIntyre v. U.S. Marshal Serv.*, No. 18-1268, 2023 WL 2447424, at *6–7 (D.N.J. 2023).

The director of the USMS "shall supervise and direct the [USMS]," *see* 28 U.S.C. § 561(g), including by investigating "alleged improper conduct on the part of [USMS] personnel," 28 C.F.R. § 0.111(n). Individuals may submit a complaint by filling out an online form. *See Complaint Regarding United States Marshals Service*

*(USMS) Personnel or Programs*, United States Marshals Service (last visited Jan. 5, 2024), https://www.usmarshals.gov/sites/default/files/media/document/complaint-form.pdf [https://perma.cc/UW46-7ZBC]. "[T]he USMS may share the information with law enforcement agencies investigating a violation of law (whether criminal, civil, and/or administrative)." *Id.* "All complaints of employee misconduct will be investigated by the appropriate agency or office. . . . [C]omplaints against [Task Force Officers] will be referred to the Investigative Operations Division . . . ." *Misconduct Investigations*, *Policy Directive 2.3*, U.S. Marshal Service, 1 (Oct. 7, 2020), https://www.usmarshals.gov/sites/default/files/media/document/usms-policy-directive-misconduct-investigations.pdf [https://perma.cc/M78C-WGBB]. And "[i]ntentional, reckless or negligent violation[s] of rules governing searches and seizures" are punishable by reprimand or removal. *Table of Disciplinary Offenses and Penalties*, United States Marshals Service, 6 (last visited Jan. 5, 2024), https://www.usmarshals.gov/sites/default/files/media/document/united-states-marshals-guidance-table-of-disciplinary-offenses-and-penalties.pdf [https://perma.cc/4CWJ-WG4R].

Moreover, the USMS is a bureau within the Department of Justice (DOJ), *see* 28 U.S.C. § 561(a), and the DOJ Inspector General "may investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice," 5 U.S.C. § 413(b)(2). A person can report misconduct "related to" the USMS to OIG by submitting an online complaint. *Submitting a Complaint*, U.S. Department of Justice, Office of the Inspector General (last visited Jan 5, 2024),

Page **13**

https://oig.justice.gov/hotline/submit_complaint [https://perma.cc/K4WK-2M3T].

OIG investigations "sometimes lead to criminal prosecution or civil or administrative action." *Criminal and Civil Cases*, U.S. Department of Justice, Office of the Inspector General (last visited Jan. 5, 2024),

https://oig.justice.gov/investigations/criminal_and_civil_cases [https://perma.cc/BVR7-G7DL]. If the OIG does not investigate the allegation, it may refer the complaint to the internal-affairs office of the relevant DOJ component (here, the USMS). *Report to Congress on Implementation of Section 1001 of the USA PATRIOT Act, No. 22-102,* U.S. Department of Justice, Office of the Inspector General, 3–4 (Sept. 2022), https://oig.justice.gov/sites/default/files/reports/22-102.pdf [https://perma.cc/YB8L-CYV2].

Mr. Logsdon makes some cogent arguments challenging the efficacy of these administrative remedies. But those arguments are addressed to the wrong audience. The Supreme Court has made clear that it is not the judiciary's function to assess the adequacy of executive orders or legislative remedies in deterring constitutional violations that might be remedied through a *Bivens*-type suit. Mr. Logsdon also contends that there is nothing new about the OIG remedy, noting that the Supreme Court has reaffirmed its three *Bivens* precedents since the initial legislative creation of Offices of the Inspector General. But the failure of any of those precedents, or any reaffirmations of those precedents, to consider this legislation is dispositive. After all, the Supreme Court has said that a departure from the *Bivens* precedents may be

justified by "the presence of potential special factors that previous *Bivens* cases did not consider." *Ziglar*, 582 U.S. at 140.

> **B.     The Motion to Reconsider**

Finally, we reject Mr. Logsdon's argument that the district court abused its discretion when it granted Defendants' motion to reconsider. He contends that the motion failed to satisfy requirements limiting when a motion to reconsider is proper. But "'every order short of a final decree is subject to reopening at the discretion of the district judge.'" *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983)). Caselaw relied on by Mr. Logsdon regarding *postjudgment* motions, such as *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000), is inapposite.

> **III.     CONCLUSION**

We **AFFIRM** the judgment below.